SEALED

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term

Grand Jury Sworn in on November 1, 2013

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. |
| | : | |
| v. | : | GRAND JURY ORIGINAL |
| | : | |
| MICHAEL R. ROSELLA, | : | VIOLATIONS: 18 U.S.C. § 1341 |
| | : | (Mail Fraud) |
| Defendant. | : | 18 U.S.C. § 1343 (Wire Fraud) |
| | : | 18 U.S.C. 1957(a) (Monetary |
| Case: 1:15-cr-00021 | : | Transactions in Property Derived From |
| Assigned To : Mehta, Amit P. | : | Specified Unlawful Activity) |
| Assign. Date : 2/19/2015 | : | |
| Description: INDICTMENT (B) | : | FORFEITURE: 21 U.S.C. § 853 |

### INDICTMENT

The Grand Jury charges that:

#### Relevant Entities and Persons

1. On April 20, 2010, a gas release and explosion occurred on the Deepwater Horizon oil rig working on the Macondo exploration well for British Petroleum ("BP") in the Gulf of Mexico. The uncapped well at the bottom of the seafloor began spewing oil into the Gulf, physically and financially impacting individuals and businesses in Louisiana, Alabama, Mississippi, Florida, and Texas.

2. On June 16, 2010, BP announced the creation of a $20 billion trust to compensate victims of the spill. The trust, designated as the Gulf Coast Claims Facility ("GCCF"), began processing claims on August 23, 2010. Individuals and businesses affected by the spill could seek compensation for damages attributable to lost personal income of employees, lost business

profits and diminished earning capacity, damage to personal or business property, and personal injury or health related problems.

3. Between August 23, 2010 and November 23, 2010, claimants could apply for Emergency Advance Payments to recover damages incurred in the first six months after the spill. Claimants were required to submit documentation of losses to the GCCF to obtain these payments. After that, claimants could apply for, among other things, Interim Payments to cover past damages. Claimants seeking Interim Payments also had to provide documentation of their losses.

4. During all times relevant to this Indictment, Defendant MICHAEL R. ROSELLA ("ROSELLA") was a United States citizen residing in the District of Columbia.

### The Scheme to Defraud

Overview of the Scheme

5. From in or around July 2010 and continuing through in or around June 2012, ROSELLA devised, intended to devise, and executed a scheme to defraud GCCF by submitting fraudulent claims for reimbursement of lost profits for a purported resort in Louisiana that did not exist.

Purpose of the Scheme

6. The purpose of the scheme was for ROSELLA to submit fraudulent claims to GCCF in order to enrich himself.

Manner and Means of the Scheme

7. On or about July 2, 2010, approximately three months after the oil spill, ROSELLA caused Bayou Barataria Resorts, Inc. (hereinafter, the "Resort") to be registered as a

2

corporation with the District of Columbia Division of Corporations. The registered agent was listed as Michael R. Rosella, 3534 Porter Street, N.W., Washington, DC 20016.

8. On or about November 2, 2010, ROSELLA, purporting to be acting as an attorney on behalf of the Resort, submitted an Emergency Advance Payment claim to the GCCF seeking to recover the Resort's lost profits from the date of the spill through September 30, 2010. The amount claimed was $2,012,238.

9. In support of the claim, ROSELLA submitted a series of false and fictitious documents to the GCCF, including: (1) a document identifying the Resort as the claimant and ROSELLA as the Resort's attorney; (2) a document identifying a "Jacques A. Felixe" as the "Managing Partner" of the Resort; (3) a cover letter, signed by ROSELLA, claiming the Resort was "an exclusive luxury recreational resort located in the bayou above Barataria Bay" and that the Resort had suffered extensive losses as a result of the Deepwater Horizon spill; (4) documents purporting to be an affidavit signed by Jacques A. Felixe, Phillipe D. Felixe, and Paul T. Felixe, attesting to their ownership of the Resort, describing the business of the Resort, and identifying business losses to the Resort as a result of the Deepwater Horizon spill; (5) maps identifying the location of the Resort; (6) recent sales records for the Resort; (7) federal tax returns for the "Felixe Family Partnership (dba Bayou Barataria Sportsman's Resort)" for the years 2007-2009; (8) Louisiana state sales tax returns for the Resort for 2009; (9) invoices to third parties for functions purportedly held at the Resort; (10) financial statements for the Resort prepared by an accounting firm for the years 2007-2009; and (11) a "Legal Services Agreement" between the Resort and Se7en, LLC, a law firm whose "President and Chief Executive Officer" were identified as ROSELLA, authorizing Se7en to assist the Resort in making a claim for damages due to the spill.

10. On or about February 23, 2011, ROSELLA submitted an Interim Claim Payment Form denoted GCCF 2000-1 (hereafter, the "Interim Claim Form"), on behalf of the Resort to the GCCF. The Interim Claim Form referred to the claim that had previously been submitted on or about November 2, 2010, and sought compensation for the Resort's lost profits of $2,335,807 through December 31, 2010.

11. The Resort and its purported principals, Jacques Felixe, Phillipe Felixe, and Paul Felixe, were fictitious, and the documents submitted to the GCCF concerning the Resort's purported business, profits, sales, income, and taxes, were false and fraudulent.

## Proceeds of the Fraud

12. On or about March 7, 2011, the GCCF informed ROSELLA in a letter that the Resort qualified for compensation from the GCCF in the amount of $2,335,807.

13. On or about March 8, 2011, the Garden City Group, a vendor that handled claim processing for the GCCF, issued a check from the GCCF in the amount of $2,335,807, made out to Bayou Barataria Sportsmans' Resort, c/o Michael Rosella, 3534 Porter Street, NW, Washington, DC 20016.

14. On or about March 14, 2011, ROSELLA opened a savings account at Wachovia Bank, a division of Wells Fargo, N.A., a financial institution, in the name of Bayou Barataria Resorts, Inc., account number XXXXXXXXX2946 (the "2946" account).

15. On or about March 15, 2011, ROSELLA deposited and caused to be deposited the $2,335,807 check from the GCCF into the 2946 account.

16. On or about March 24, 2011, ROSELLA opened a checking account at Wachovia Bank, a division of Wells Fargo Bank, N.A., a financial institution, in the name of Bayou Barataria Resorts, Inc., account number XXXXXXXXX2920 (the "2920" account).

## COUNT ONE
Mail Fraud
(18 U.S.C. § 1341)

17. Paragraphs 1 through 16 of this Indictment are realleged and incorporated herein by reference as if fully set forth herein.

18. From on or about July 2, 2010, and continuing to on or about March 15, 2011, within the District of Columbia, MICHAEL R. ROSELLA did knowingly and with intent to defraud, devise and attempt to devise a scheme and artifice to defraud, and for obtaining money or property by means of false and fraudulent pretenses, representations and promises, knowing that they were false and fraudulent when made, and for the purpose of executing such scheme and artifice and attempting to do so, deposited a matter or thing to be sent or delivered by private or commercial interstate carrier, or knowingly caused to be delivered by such carrier according to the direction thereon, or at the place at which it was directed to delivered by the person to whom it was addressed, a matter or thing.

### Purpose of the Scheme and Artifice

19. The Grand Jury realleges and incorporates by reference Paragraph 6 of this Indictment as a description of the purpose of the scheme.

### The Scheme and Artifice

20. The Grand Jury realleges and incorporates by reference Paragraphs 7 through 11 of this Indictment as a description of the scheme and artifice.

### Use of the Mails

21. On or about November 2, 2010, ROSELLA sent, from the District of Columbia, via the interstate carrier Federal Express, a package addressed to the attention of Kenneth R. Feinberg, Administrator, 5151 Blazer Parkway, Suite A Dublin, Ohio 43017, containing the

Resort's claim and supporting documents.

(**Mail Fraud**, in violation of Title 18 United States Code, Section 1341)

## COUNTS TWO THROUGH FOUR
Wire Fraud
(18 U.S.C. § 1343)

22. Paragraphs 1 through 16 of this Indictment are realleged and incorporated herein by reference as if fully set forth herein.

23. From on or about November 16, 2010, and continuing to on or about March 15, 2011, within the District of Columbia, MICHAEL R. ROSELLA did knowingly and with intent to defraud, devise and attempt to devise a scheme and artifice to defraud, and for obtaining money or property by means of false and fraudulent pretenses, representations and promises, knowing that they were false and fraudulent when made, and for the purpose of executing such scheme and artifice and attempting to do so, transmitted and caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, signals, pictures and sounds.

### Purpose of the Scheme and Artifice

24. The Grand Jury realleges and incorporates by reference Paragraph 6 of this Indictment as a description of the purpose of the scheme.

### The Scheme and Artifice

25. The Grand Jury realleges and incorporates by reference Paragraphs 7 through 11 of this Indictment as a description of the scheme and artifice.

### Use of the Wires

26. On or about the dates specified as to each count below, ROSELLA, in the District of Columbia and elsewhere, for the purpose of executing the aforesaid scheme and artifice to

defraud, and attempting to do so, did knowingly transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures and sounds, as more particularly described below:

| Count | Approximate Date | Description of Wire Communication |
|---|---|---|
| 2 | November 16, 2010 | Electronic mail from ROSELLA in the District of Columbia sent to GCCF in Ohio, transmitted through servers in Ohio. |
| 3 | December 8, 2010 | Electronic mail from ROSELLA in the District of Columbia sent to GCCF in Ohio, transmitted through servers in Ohio. |
| 4 | February 23, 2011 | Electronic mail from ROSELLA in the District of Columbia sent to GCCF in Ohio, transmitted through servers in Ohio. |

(**Wire Fraud**, in violation of Title 18 United States Code, Section 1343)

### COUNTS FIVE AND SIX
Monetary Transactions in Criminally Derived Property
(18 U.S.C. § 1957(a))

27. Paragraphs 1 through 16 of this Indictment are realleged and incorporated herein by reference as if fully set forth herein.

28. On or about the dates set forth below, in the District of Columbia, and elsewhere, ROSELLA knowingly engaged and attempted to engage in monetary transactions by, through, and to financial institutions, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, deposits, withdrawals, transfers and exchanges described below of United States currency, funds, monetary instruments in the amounts specified below, such property having been derived from a specified unlawful activity, that is, mail fraud in violation of Title 18, United States Code, Section 1341, and wire fraud in violation of Title 18 United States Code, Section 1343:

| Count | Approximate date | Approximate amount | Nature of Transaction |
|---|---|---|---|
| 5 | March 15, 2011 | $2,335,807 | Deposit of check from GCCF into 2946 account |
| 6 | March 24, 2011 | $100,000 | Transfer from 2946 account to 2920 account |

**(Monetary Transactions in Criminally Derived Property of a Value Greater than $10,000,** in violation of Title 18 United States Code, Section 1957(a))

## FORFEITURE ALLEGATIONS

1. Upon conviction of the offenses alleged in Counts One through Four of this Indictment, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) (as applicable through 28 U.S.C. § 2461(c)), any property, real or personal, which constitutes or is derived from proceeds obtained, directly or indirectly, as the result of this offense.

2. Upon conviction of the offenses alleged in Counts Five and Six of this Indictment, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(A), any property, real or personal, involved in the transactions that are the subject of these Counts, or any property traceable to such property.

3. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the Court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property that cannot be subdivided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the value of the property described above, pursuant to 21 U.S.C. § 853(p).

(**Criminal Forfeiture**, pursuant to Title 21, United States Code, Section 853)

A TRUE BILL:

_____
FOREPERSON

*William J. Stellmach* (signature)
Fraud Section
Criminal Division
United States Department of Justice